**COMMONWEALTH of Kentucky, Appellant,**

v.

**Leslie WILLIS, Appellee.**

Supreme Court of Kentucky.

July 3, 1986.

As Modified on Denial of Rehearing Oct. 16, 1986.

David L. Armstrong, Atty. Gen., Penny R. Warren, Asst. Atty. Gen., Frankfort, Raymond M. Larson, Patrick M. Malone, Sp. Asst. Atty. Gens., Lexington, for appellant.

John P. Schrader, Geralds, Moloney & Jones, Lexington, for appellee.

WINTERSHEIMER, Justice.

This appeal is from an order denying a request to take the testimony of a 5–year-old sexual abuse victim pursuant to KRS 421.350(3), (4), (5), and holding those sections unconstitutional because they deny the defendant the right to confrontation and violate the separation of powers doctrine.

Willis was indicted on two counts of first-degree sexual abuse. Before trial, he moved to exclude the testimony of the child victim, claiming that she was incompetent to testify. A competency hearing was held in the chambers of the trial court with the trial judge, the court reporter, defense counsel, the defendant, the prosecutor, the mother of the victim and the victim present.

When the child was asked why she would not respond to certain questions, she stated:

A. I don't want him—hurt me.

 \* \* \* \* \* \*

Q. Somebody here you don't want to see?

A. (Witness nods affirmatively.)

Q. Who's that?

A. Uncle Leslie. (TH 9.)

 \* \* \* \* \* \*

Q. Are you going to talk for us?

A. I don't want him here. (TH 10.)

 \* \* \* \* \* \*

A. Yes. I don't want Uncle Leslie, Mommy. (TH 19.)

The trial judge was unable to rule on whether she was competent or incompetent because her answers were unresponsive.

The prosecution then pursued a motion to proceed under KRS 421.350(3) or (4), which permits the use of television cameras to present the testimony in a sex abuse case of a victim under the age of twelve so that the child need not be aware of the defendant's presence. After submission of written arguments, the trial judge sustained the defense motion to exclude the testimony of the child witness because he was of the opinion that Sections 3, 4 and 5 of KRS 421.350 were unconstitutional, as a violation of the defendant's right to confrontation and a violation of the separation of powers doctrine in Section 28 and 109 of the Kentucky Constitution.

The Commonwealth was unable to prosecute the case because the child witness was

the only eye witness to the crimes charged and appealed pursuant to KRS 22A.020 which authorizes interlocutory appeals.

This Court reverses the decision of the circuit court and remands this case for completion of the competency hearing and any trial resulting therefrom. Sections 3 and 4 of the statute are constitutional, and there is no violation of the separation of powers doctrine.

The issue is whether the statute in question offends either Section Eleven of the Kentucky Constitution or the Sixth Amendment to the United States Constitution, both of which deal with the right of a criminal defendant to be confronted with the witnesses against him.

The specific language of the Kentucky Constitution, § 11, is as follows:

In all criminal prosecutions, the accused has the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor.

The Sixth Amendment to the United States Constitution provides as follows:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation, to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor and to have the assistance of counsel for his defense.

The requirement in the Kentucky Constitution to "meet witnesses face-to-face" is basically the same as the Sixth Amendment to the federal constitution which provides a right of confrontation. The federal courts have indicated that the Confrontation Clause reflects a preference for face to face confrontation at trial. *Ohio v. Roberts*, 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980).

Our legislature, after extensive public hearings on the matter of child sex abuse and responding to a plea for witness protection, has accepted the philosophy that testifying in a formal court room atmosphere at a criminal trial before the defendant, judge and jury can be one of the most intimidating and stressful aspects of the legal process for children. Exercising the legitimate right of legislative policy making, the statute in question was enacted.

The testimony of a child witness can be presented by video tape taken before trial by closed circuit television used during trial or by in-court screening of the defendant from the sight and hearing of the witness provided that consideration is given to the rights of the defendant as afforded by the Sixth Amendment of the Federal Constitution and Section Eleven of the Kentucky Constitution provided the technology is available and used so that any possible infringement of the rights of the defendant is insubstantial. The Commonwealth should be required to persuade the trial judge that such is reasonably necessary and provide the technical details whereby the testimony will be taken with the child screened from the sight and hearing of the defendant while at the same time the defendant can view and hear the child and maintain continuous audio contact with defense counsel.

I

KRS 421.350(3) and (4) does not unduly inhibit the right of cross-examination. The accused still has the right to hear and observe the witness testify and the jury has the opportunity to view the video and evaluate the demeanor and credibility of the witness.

The sections of the statute apply only to a narrow class of witnesses, children twelve years old or younger who are victims of sex offenses. They impose no restrictions on cross-examination; allow the finder of fact to observe the demeanor of the witness and require that defendant be present to see and hear the testimony. The law is available at the discretion of the trial

judge in the interest of the truth determining process. The appropriate balancing of the competing interests of the right of confrontation and the right of a witness to be free of intimidation favors the constitutionality of the statute. *See Mattox v. United States*, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895).

The discretion provided to the trial judge pursuant to KRS 421.350 allows the utilization of modern technology so as to enhance the truth determining qualities of a trial. Live testimony is always preferred, but other techniques can be used when needed as permitted by the trial judge.

■ The statute requires that the defendant be present in person so that he may see and hear the witness but he shall not be seen by the child. The same basic procedure permits the testimony to be taken prior to trial and preserved by video tape. § 4. The availability of procedures permits the defendant to fully participate in cross-examination and to adequately see and hear the witness. The reproduced testimony must be of adequate quality for the jurors to assess the demeanor of the witness and to evaluate credibility. The trial judge paraphrased the issue as to whether the privilege of viewing a witness through a one-way mirror or a video monitor is a constitutionally acceptable substitute for face-to-face confrontation. We believe that it is. *See Wigmore on Evidence* § 1397 (Chadbourne Revision, 1979).

The legislative authorization of video tape or closed circuit trial testimony by certain child victims pursuant to KRS 421.-350 does not violate a defendant's right to confrontation as protected by the constitution.

*Mattox v. United States, supra,* does not support the argument that confrontation requires visual contact between the defendant and the witness. *Mattox* authorizes admission of dying declarations and the court observed that the general prohibition against hearsay evidence must occasionally give way to considerations of public policy and the necessities of the case.

*Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973), states that the right to confront and cross-examine is not absolute and may in appropriate cases be compromised to accommodate other legitimate interests in the criminal trial process.

*Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), states in part that the confrontation clause reflects a preference for face-to-face confrontation but that a primary interest secured by the right is the right of cross-examination. The U.S. Supreme Court recognizes that competing interests may warrant dispensing with confrontation at trial.

Generally the preference for face-to-face confrontation establishes a rule of necessity where the prosecution must demonstrate unavailability prior to introduction of a hearsay statement. Its underlying purpose is to augment accuracy in the truth finding process by insuring the defendant an effective means to test adverse evidence.

*Roberts, supra,* found no violation of the right to confrontation by introduction of written testimony from a preliminary hearing. Kentucky permits hearsay testimony to be introduced under similar circumstances. *Maynard v. Commonwealth,* Ky.App., 558 S.W.2d 628 (1977).

■ The videotaped or televised testimony under §§ 3 or 4 of the statute is not hearsay. It is the functional equivalent of testimony in court. The testimony is taken with the court, counsel and the defendant present in person. Full cross-examination is authorized. The defendant and the jury can see and hear the witness and assess credibility by observation of the demeanor of the witness.

The motion to take the victim's testimony pursuant to KRS 421.350 does not limit the defendant's right to cross-examination in any way. He is not precluded from bringing out any evidence of hostility, bias or other motive for testifying or from otherwise attacking the credibility of the witness. Cf. *Barnett v. Commonwealth*, Ky., 608 S.W.2d 374 (1980). The right of con-

frontation is fully protected as required by the constitution and RCr 7.12.

■ There is no authority to support the proposition that the right of confrontation guaranteed by the Kentucky Constitution should be construed more stringently than the same right in the United States Constitution. The debates on the Kentucky Constitution of 1891 include references to the "face to face" language, but these discussions neither support nor refute the position of the defendant. However, construction of the Sixth Amendment by federal courts has consistently included identical language. *See Snyder v. Massachusetts,* 201 U.S. 102, 105–106, 54 S.Ct. 330, 332, 78 L.Ed.2d 674 (1933); *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).

The Kentucky statute is identical to a Texas law adopted in 1983. Texas Criminal Procedural Code, Anno. § 38.071 (Vernon, 1983). Subsection 2 of the Texas statute has withstood attack on confrontation grounds but the comparable Subsection 2 of KRS 421.350 is not in issue here. *Jolly v. Texas,* 681 S.W.2d 689 (Tex.App., 1984). A number of other jurisdictions have similar statutes or rules but the specific issue raised here has not been reported by their appellate courts.

*State v. Sheppard,* 197 N.J.Super. 411, 484 A.2d 1330 (1984), permits the use of closed circuit television testimony taken under circumstances similar to those described in KRS 421.350. After an extensive analysis of various authorities on the right of confrontation and the exceptions thereto as they regard child abuse, *Sheppard, supra,* held that the video tape procedure did not deny the right of the defendant to confrontation and due process. We are persuaded that the rationale of the *Sheppard* decision is sound because the exception to the Confrontation Clause is far outweighed by the inability to effectively prosecute child abusers where the evidence against them cannot be presented without intimidation.

We realize that the statute in question does limit the manner of confrontation, but it does not infringe on the right of confrontation, and a proper balancing of the competing interests of society in general and the accused require that the statute be upheld.

Concern about the proper way to present the testimony of child victims in sex abuse cases is not new. An early review of the problem can be found in Libai, *The Protection of Child Victim of a Sexual Offense in the Criminal Justice System,* 15 Wayne Law Review 977 (1969). *See* Ordway, D.P. *Proving Parent-Child Incest,* 15 University of Michigan Journal of Law Reform 131 (1981).

Some jurisdictions are expanding the hearsay exceptions to accommodate the special problems involved in child sex abuse cases. *See A Comprehensive Approach to Child Hearsay Statements in Sex Abuse Cases,* 83 Columbia Law Review 1745–1766 (1983). A recent comprehensive review of the entire question may be found in *Symposium Issue: Child Abuse and the Law,* 89 Dickinson Law Review 3 (Spring 1985).

The rights of the defendant must be balanced with the legitimate concern for victims of the crime. Kentucky has long recognized on a broader scale, special treatment for child witnesses by authorizing leading questions on direct examination. *Meredith v. Commonwealth,* 265 Ky. 380, 96 S.W.2d 1049 (1936); *Peters v. Commonwealth,* Ky., 477 S.W.2d 154 (1972).

Kentucky also recognizes various exceptions to the right of confrontation. Business records, dying declarations, *res gestae* statements and excited utterances are admissible despite the inability of the defendant to cross-examine. Written depositions may be introduced at trial. RCr 7.12; *Noe v. Commonwealth,* Ky., 396 S.W.2d 808 (1965). A defendant may be excluded from the court room because of his misconduct and consequently be denied the right of physical confrontation. RCr 8.28; *Scott v. Commonwealth,* Ky., 616 S.W.2d 39 (1981).

■ The statutory provisions are not automatic but instead rest in the sound discretion of the trial judge. If the prosecu-

tion is unable to show any necessity for use of the statute, it could be an abuse of discretion to grant a motion over defense objection.

The intent of the legislature in enacting the statute is obvious. If unavailability of the witness in the traditional sense is construed to be a statutory prerequisite, then the legislature did a vain act in adopting KRS 421.350 because it would provide no further protection for child witnesses than was already available. Obviously to carry out the true legislative intent to protect child victims of sex abuse under the age of twelve, the trial court must have wide discretion to consider the age and demeanor of the child witness, the nature of the offense and the likely impact of testimony in court or facing the defendant.

Here the defendant was known to the victim and the trial judge specifically found that the child would not testify as to any details of the alleged offense and appeared to be reluctant to testify in the presence of the defendant.

■ It is entirely possible that when a child witness is too frightened or inarticulate to allow any significant examination, even at a competency hearing, then a finding of unavailability may be justified. Ironically, putting the child through the ordeal of testifying in open court may denigrate the reliability of her testimony. *Ordway, supra* at 132.

Confrontation does not require live presentation of evidence to the trier of fact. A photographic or electronic presentation is not perfect as a substitute for live testimony but it will suffice. Video tape cannot be any less helpful in enabling a jury to assess credibility than a bare transcript read by the prosecutor. *See United States v. King,* 552 F.2d 833 (9th cir. 1976).

■ Under the statute a defendant has the right to object to and seek exclusion of all portions of a tape which he considers unfair or unduly prejudicial. The credibility of the witness can be fully explored on cross-examination and can be argued to the jury. Video tapes have received wide ac-

ceptance in criminal trials and have been uniformly held admissible upon showing of a proper foundation. *See Admissibility of Video Tape Film Evidence in Criminal Trial,* 60 A.L.R.3rd 333. The argument by Willis regarding the reliability of video tape testimony is unconvincing.

The reliance by Willis on *Herbert v. Superior Court of the State of California,* 117 Cal.App.3rd 661, 172 Cal.Rptr. 850 (1981) is misplaced. In that case there was no record that the child required the special seating arrangement or that any one had requested it or that the child was intimidated by the defendant. Here the trial judge found that the child witness was unable to testify because of the defendant's presence. In *Herbert, supra,* the accused was not able to see the witness which is not the case here. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1975), is distinguishable in that the victim there suffered mere temporary embarrassment from disclosure of his juvenile record whereas the defendant was precluded from his defense theory of bias by the witness. Under KRS 421.350, no defense theory is blocked and the state has compelling interests in prosecuting crimes in which the only witness is a young, fearful and uncommunicative child and protecting that child from the prolonged ordeal of recounting the abusive acts in open court.

There is no constitutional right to eyeball to eyeball confrontation. The choice of the words "face to face" may have resulted from an inability to foresee technological developments permitting cross-examination and confrontation without physical presence.

In the Eighteenth and Nineteenth Centuries, live testimony was the only way that a jury could observe the demeanor of a witness. The use of video tapes does not represent a significant departure from that tradition because the goal of providing a view of the witness's demeanor to the jury is still achieved.

The intervention of a video screen or a one-way mirror does not infringe upon the defendant's right to confrontation. There

is a difference between confrontation and intimidation. It would be unconstitutional for the government to take evidence in secret and outside of the presence of the defendant, but there is no right to eyeball to eyeball presence.

 The right to be present at trial and the right to confrontation must be applied in such a way as to produce a fair result and enhance the truth-determining process. The right to confront does not confer an automatic right to intimidate. The sound discretion of the trial judge is the best gauge to determine the fairness of a proceeding.

## II

The statutory adoption of a discretionary method for the admission of evidence is not a violation of the separation of powers doctrine as enunciated in Sections 28 and 109 of the Kentucky Constitution.

The statute provides for total discretion in the trial judge as to the use of the provisions of the law. Consequently there is no invasion of any judicial power. The statute does not interfere with or threaten interference with the orderly administration of justice and it has not been superseded by any rule of procedure.

Rule 7.12 does not diminish the Confrontation Clause; rather it enhances it. Technology will permit the purposes advanced by KRS 421.350 to be accomplished consistent with the Confrontation Clause whether at trial or deposition.

 The statute does not conflict or violate the requirements of RCr 7.12. The right of cross-examination is fully protected. The accused is permitted to see and hear the child and has the opportunity to participate in cross-examination through consultation with his attorney. The witness in this kind of situation may be unable to testify under normal, traditional trial conditions because of age and the nature of the crime. Therefore, her deposition would ordinarily be admissible. *See* RCr 7.20(1). *Wells v. Commonwealth*, Ky., 562 S.W.2d 622 (1978), held that RCr 7.20 regarding the use of depositions should not be so narrowly construed to preclude other circumstances when a witness is unavailable. RCr 7.20 is intended to preserve the evidence in the event the witness becomes unavailable to testify.

The use of video or television equipment as a substitute for personal appearance, either in trial or in deposition, requires the Commonwealth to demonstrate that such use is reasonably necessary and to provide the technical details whereby the testimony will be taken with the child screened from the sight and hearing of the accused, while at the same time, the defendant can view and hear the child and maintain continuous audio contact with his defense counsel. Consequently, the only incursion on the defendant's right of confrontation is that the child is not required to look at the defendant's face or listen to his comments.

There is no authority under traditional court room procedures which specifically requires any witness to look at the defendant. A witness has never been disqualified by mere refusal or inability to look at the defendant. The testimony of a blind victim would not be invalid. The same is true for the testimony of a witness who refuses to look on the accused. By analogy a defendant would not be denied the right of confrontation when a young victim is so intimidated by his mere presence that she cannot testify unless she is unable to see or hear him.

The strength of the State and Federal Constitutions lies in the fact that they are flexible documents which are able to grow and develop as our society progresses. The purpose of any criminal or civil proceeding is to determine the truth. KRS 421.350 provides such a statutory plan while protecting the fundamental interests of the accused as well as the victim.

 The statute does not interfere or threaten to interfere with the orderly administration of justice and it has not been preempted by the rule-making authority of this Court. Total discretion remains with the trial judge.

It is the holding of this Court that the limited provisions of KRS 421.350(3) and (4) as they apply to child witnesses 12 years of age or younger who are the victims of sex abuse are constitutional. They do not deny the right of confrontation by a defendant nor do they violate the separation of powers doctrine.

The decision of the circuit court is reversed. This matter is remanded to the trial court for completion of the competency hearing.

GANT, LEIBSON and VANCE, JJ., concur.

LEIBSON, J., concurs by separate opinion in which he is joined by GANT and VANCE, JJ.

STEPHENS, C.J., dissents by separate opinion.

STEPHENSON and WHITE, JJ., join in his dissent.

LEIBSON, Justice, concurring.

I concur in the opinion that KRS 421.350, Sections Three (3) and Four (4) are not necessarily unconstitutional on their face, with the caveat that both the trial court and our Court must take care to see that they are not unconstitutionally applied.

I believe that there is technology now available sufficient to adequately protect the accused's constitutional rights of confrontation from any substantive infringement, while keeping the accused out of the sight and hearing of the child witness while the child testifies.

With that in mind this Concurring Opinion expresses my views as to the minimum requirements for applying this statute constitutionally, keeping in mind that the accused's constitutional rights are preeminent. They cannot rightfully be impaired by either the General Assembly or the Judiciary, no matter how appealing the reason for doing so may appear at the time. This includes the constitutional protections afforded the accused in both the United States and Kentucky Bill of Rights. There are no counterbalancing constitutional guarantees of victim's rights which justify their impairment.

A court's idea, or a legislature's idea, of what serves to advance the accuracy of the truth determining process does not preempt the accused's constitutional right to confront his accusers. The legislature has no right to create an exception to the hearsay rule that substantially impairs the defendant's right to confront his accusers. The exceptions to the hearsay rule were created from longstanding, traditional rationales consistent with the common law's understanding of the right to confront one's accusers, and cannot be rewritten simply to satisfy a court's or a legislature's predilections as to what rules of evidence will best serve the interests of justice.

However, it is constitutionally possible to present a child's testimony, (a) by videotape deposition taken before trial, (b) by closed circuit television utilized during trial, or (c) by in-court screening of the defendant from the sight and hearing of the witness, *provided:* (1) primary consideration is given to the defendant's constitutional right of confrontation as guaranteed by the Sixth Amendment of the U.S. Constitution and Section 11 of the Kentucky Constitution; (2) technology is available and utilized so that any impairment of the rights of the accused to confront the witness is technical and insubstantial; and (3) due regard is paid to the necessity principle.

Before being permitted to take the child's deposition, or to otherwise use television as a substitute for personal appearance in court, the Commonwealth should be required: (1) to persuade the trial court that such is reasonably necessary; and (2) to provide the technical details whereby (a) the testimony will be taken with the child screened from the sight and hearing of the defendant while, at the same time, (b) the defendant can view and hear the child and maintain continuous audio contact with his defense counsel.

Thus the only incursion on the defendant's right of confrontation is that the child is not required to look at the defendant's face or listen to his comments.

It is my opinion that where the defendant has legitimately undertaken to defend himself *pro se*, his right to question all witnesses (including the child) cannot be impaired. However, he cannot elect to selectively question the child, or the child and one or two other witnesses, and utilize the services of an attorney for the remainder of his defense.

Regardless of whether the child's testimony is videotaped in advance or presented by contemporaneous television transmission, there is no reason why the competency hearing conducted by the trial judge to determine whether the child is (or was at the deposition) qualified to give testimony should not initially be attempted in open court before the testimony is received in evidence. To do so enhances the judicial determination as to the admissibility of the child's evidence by giving the jury first hand insight into the credibility of the child.

Further, and more important for present purposes, only after we bring the child into court and initiate questioning can we determine as a fact that videotape or television is necessary in lieu of personal appearance. The trial court should not prejudge that the child would not testify in open court, and decide that an alternative method of presentation is needed before the primary means is attempted. Under RCr 7.20 a deposition (which includes videotape) can be taken before trial and objections to competency reserved for trial.

In the present case, the competency hearing was attempted in the court's chambers in the presence of the defendant and it is quite possible that the child was unable or unwilling to speak because the defendant was in such close quarters. If the child were on the witness stand being questioned by the judge, separated from the defendant by substantial space and a counsel table, the child may not have been reluctant to answer. The court's mistake in the present case was to initiate the competency hearing in the wrong place, this is to say, in chambers rather than in open court. A televised deposition can be taken, utilizing the techniques previously discussed to preserve the substance of the right of confrontation, and the videotape then could be utilized at the trial after attempting a competency hearing in open court. If during the attempt to conduct this competency hearing in open court it should become necessary to screen the defendant from the child's sight, a brief recess for rearrangements as necessary to accommodate the problem should not present a major obstacle.

Finally, I consider subsection (5) of KRS 421.350 as constitutionally impermissible under any circumstances. Subsection (5) specifies that:

"If the court orders the testimony of a child to be taken under subsections (3) or (4) of this section, the child may not be required to testify in court at the proceeding for which the testimony was taken."

This provision conflicts with my views regarding qualifying the child in open court, as expressed in the preceding paragraph. More fundamentally, this section conflicts with the accused's Sixth Amendment right to call witnesses in his own defense, which must necessarily include the right to call adverse witnesses, including a child who has given evidence against him.

Regardless of how the Commonwealth conducts its case, including utilization of KRS 421.350(3) or (4), when the time comes for the defendant to put on his case, he is entitled to call any witness he wishes. If the child will not answer questions when called by the defendant, the jury is entitled to know this and evaluate this aspect of the case.

It is important to protect the sensibilities of a child, but it is more important to protect the accused's right to properly defend himself within the law as guaranteed by the Constitution. No person should be convicted of a felony and sent off to prison when he has not been able to defend himself as guaranteed by the Constitution of

the United States and the Constitution of the Commonwealth of Kentucky.

Under my view of the problem, if technology is properly applied, the only element that is eliminated is that the child is not required to look at or listen to the defendant while testifying. Since a witness always has this option, except where the accused is representing himself, I view the procedure as nothing more than a technological accommodation.

GANT and VANCE, JJ., join in this concurring opinion.

STEPHENS, Chief Justice, dissenting.

What the majority of this Court has wrought in this case is the substantial watering down of one of our most traditional constitutional protections afforded our citizens—the right of an accused at his criminal trial to have a personal confrontation, before a jury of his peers, with his accuser. The majority has put the imprimatur of this Court on a new revision of the rule which says that the right of confrontation is no longer "face to face", but is rather, "face—to television screen—to face".

Because of occasional problems with the testimony of alleged young victims in child abuse cases, our General Assembly enacted, in 1984, the questioned statute—KRS 421.350(3), (4), and (5). In brief that statute provides that in criminal prosecutions involving a child alleged to have been the victim of sexual activity, the trial judge may order that the testimony of the child at the trial be taken in a room other than the public courtroom and be televised by closed circuit equipment or be recorded for showing in the courtroom.

Further, it provides that although counsel for the accused may be present in the room with the child during his or her testimony, *the accused may not be present.* The accused may see and hear the child's testimony (presumably through the use of video equipment), but the witness may not see or hear the accused.

Under the aegis of this statutory scheme the accused may not be physically present before his accuser. The jury may also be removed, physically, from the presence of the accuser.

Is such a procedure consistent with the letter and the spirit of the Sixth Amendment to the United States Constitution or with the spirit and letter of Section Eleven of the Kentucky Constitution? The majority has answered this question in the affirmative. I respectfully disagree.

The Sixth Amendment is the cornerstone of the rights accorded an accused at his trial on criminal charges. It mandates that:

"In all criminal proceedings, the accused shall enjoy the right ... to be confronted with the witnesses against him...." U.S. Const.Amend. VI.

Our Kentucky Constitution reiterates this historical right, in more definitive language.

"In all criminal prosecutions, the accused has the right ... to meet the witnesses face to face...." Ky. Const.Sec. 11.

It is my personal view that this *right* is not to be abrogated. Convenience or ease of prosecution of any criminal offense is not, and should not be, a factor in interpreting the basic rights of an accused person.

Historically, the right of confrontation has had two purposes. The primary purpose is to secure for the accused the full and unfettered right of cross-examination of the witnesses against him. The secondary purpose is to allow through the "personal appearance" of the accuser, the judge and the jury to closely observe, first hand, the "elusive and uncommunicable evidence of a witness' deportment while testifying." 5 Wigmore, Evidence § 1395 (Chadbourn rev. 1974).

The rationale of the primary purpose is well set out in the case of *People v. Fish,* 125 N.Y. 136, 26 N.E. 319 (1891)

"It is quite a valuable right to a prisoner to be confronted upon his trial with the witnesses against him, so that he may cross-examine them, and the jury see them, and thus judge their credibility...." 26 N.E. at 322.

The United States Supreme Court—not unexpectedly—views the matter in the same vein. In *Mattox v. U.S.*, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895) the Court stated that the primary purpose of the right of confrontation is to permit

"... personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him [the accuser] to stand *face to face* with the jury in order that they may look at him, and judge by his demeanor *upon the stand*, and the manner in which he gives his testimony whether he is worthy of belief." 156 U.S. at 242–243, 15 S.Ct. at 339 (emphasis added).

The rationale of the secondary purpose is well expressed in Wigmore's treatise on Evidence where personal confrontation is described as:

"The witness present, the promptness and unpremeditatedness of his answers or the reverse, their distinctness and particularity or the want of these essentials, their incorrectness in generals or particulars, their directness or evasiveness, are soon detected.... The appearance and manner, the voice, the gestures, the readiness and promptness of the answers, the evasions, the reluctance, the silence, the contumacious silence, the contradictions, the explanations, the intelligence or the want of intelligence of the witness, the passions which move or control—fear, love, hate, envy, or revenge—are all open to observation, noted and weighed by the jury." 5 Wigmore, Evidence § 1395 (Chadbourn rev. 1974) quoting Chief Justice Appleton, *Evidence* (1860).

This court has, of course, enunciated the right of confrontation and has embraced the mandate of the United States Constitution and the Kentucky Constitution. *Harris v. Commonwealth*, Ky., 315 S.W.2d 630 (1958). In *Flatt v. Commonwealth*, Ky., 468 S.W.2d 793 (1971) this Court held that, "[t]he right of confrontation is limited to witnesses *and one who would be a witness in a criminal case must confront the accused.*" *Id.* at 794. (emphasis added).

The majority, it seems to me, has not followed the historical guidelines and tests of the right of confrontation. The majority has decided that the right of confrontation does not have to be "face-to-face". The majority has decided that the right of confrontation is satisfied by the interposition of a television screen between the accused and his accuser. The majority has decided that the right of confrontation is fulfilled when the accused, and the jury, are not even in the same room—an open courtroom—with the accused. The majority has decided that a television screen will reveal to the accused and to the jury the *complete* picture of the accuser, with all his emotions and mannerisms. The majority has denied the right of the accused and the jury to see the reaction of the accuser to the physical presence of the accused.

The majority opinion—no matter how carefully one slices it—has virtually eliminated the right of *effective* cross-examination. One can only imagine the multitude of unacceptable logistical scenarios when the accused is in one room attempting to communicate with his counsel in another room. One can picture the accused or a messenger attempting to run back and forth with notes everytime a question seems necessary. Or, perhaps, a private telephone line or a private radio communication system would be provided. Under these circumstances it is difficult to imagine that cross-examination could exist as a helpful tool for the defense and I believe any trial attorney would find these conditions intolerable. Any substantial limitation on the effectiveness of cross-examination strikes right to the heart of the right of confrontation.

By declaring the statutory scheme constitutional, the majority of this Court has taken a giant step in diminishing, if not eliminating, a fundamental right granted to all of us. No one does, and I certainly do not, condone the virulent and growing crime of child abuse. But, no one should, and I certainly do not, condone any policy

of the General Assembly which effectively negates a constitutional right.

Much of the Attorney General's oral argument dealt with the statutory goal of making it easier to prosecute alleged perpetrators of child abuse. I do not subscribe to such reasons when the Bill of Rights of the United States Constitution and a provision of the Kentucky Constitution are clearly abrogated by such legislation. "Face to face" means just that.

I would affirm the trial court.

STEPHENSON and WHITE, JJ., join in this dissent.